Andrew Torio
16 Herbert ave
Port Washington, NY 11050
917-682-6532

22 CV 10980

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

Case No._____

| | |
|---|---|
| Andrew Torio, ) | |
| ) | |
| *Plaintiff,* ) | **COMPLAINT FOR DAMAGES** |
| ) | |
| v. ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| Cushman and Wakefield, ) | |
| ) | |
| Fatima McKeon, ) | |
| Individually, ) | |
| ) | |
| Dawn Short-Austin, ) | |
| Individually, ) | |
| *Defendants.* ) | |
| _____/ | |

## INTRODUCTION

Plaintiff, Andrew Torio, comes before this Court to file this COMPLAINT, requesting

legal relief for unconstitutional and tortious conduct committed by Cushman and wakefield,

Fatima McKeon the Director of Engineering, and Dawn Short-Austin  the HR Manager. Plaintiff

reserves the right to amend this Complaint.

1

Plaintiff, Andrew Torio, (hereafter "Plaintiff or "Torio"), worked as a full-time Engineer for Cushman and Wakefield and had an impeccable record of attendance and performed his required duties without fail.

Starting in August of 2021, and lasting until December of 2021, Plaintiff was socially pressured, psychologically abused, and emotionally traumatized by the actions of his employer, Cushman and Wakefield.

Defendants created a hostile work environment that allowed and promoted an atmosphere of offensive and pervasive behavior that affected the Plaintiff mentally, emotionally, and physically.

Religious liberty is enshrined in the text of our Constitution and in numerous federal statutes. In the United States, the free exercise of religion is not a mere policy preference to be traded against other policy preferences. It is a fundamental right.

The Free Exercise Clause protects not only the right to believe or the right to worship; it protects the right to perform or abstain from performing certain physical acts in accordance with one's beliefs. Federal statutes, including the Religious Freedom Restoration Act of 1993 ("RFRA"), support that protection broadly defining the exercise of religion to encompass all aspects of observance and practice, whether or not central to or required by a particular religious faith.

This action arises out of the Defendant and their employees using coercion and duress to force compliance from Plaintiff Torio for refusing to take the experimental drug that is COVID-19 vaccine as demanded through Cushman and Wakefield's policy to require vaccination in the work place by order of the commissioner of Health and Mental Hygene.

This action arises out of egregious, malicious, and heavy-handed religious persecution by the Defendants and their employees, who singled out religious objectors and persecuted the objectors with fear, intimidation, and examination of their beliefs.

This action arises out of the Defendants' retaliation against the Plaintiff when exercising his freedom of religion with refusal to comply with the corporate policy of the employer in regard to the mandatory COVID-19 vaccinations.

This action arises out of the Defendants' violation of plaintiffs rights to refuse a vaccine that is under Emergency authorization.

This action arises out of the reckless indifference and malicious persecution displayed by Cushman and Wakefield to the rights of their employees.

This action arises from the Defendants reliance on suggestions, guidelines, recommendations, and advice, from corporate, state, and federal agencies being the justification to harass, threaten, and intimidate the Plaintiff.

This action arises from the Defendants own admission of becoming a state actor acting on behalf of governmental bodies, and is therefore subject to the limitations imposed on government by the United States Constitution, including the First, Fourth, Fifth, and Fourteenth Amendments. "Order of the Commisioner of Health and Mental Hygene to require covid-19 vaccination in the workplace" Since the Defendants took the position of becoming a police arm of the law, as outlined in their assumed authority to keep employees, and the community safe, they are for all intent and purposes acting on behalf of the state.

Plaintiff alleges that (1) the public function, (2) joint function/symbiotic relationship, and the (3) nexus test are incorporated into this Complaint sufficiently.

The causes of action brought are:

> **(1) U.S.C. Title 42 § 2000 (e) (5), U.S.C. Title 42 § 1981 (a) (b),**
>
> **(2) U.S.C Title 21 360bbb-3.**
>
> **(3) common law conspiracy, and**
>
> **(4) negligent infliction of emotional stress.**

## JURISDICTION

All Counts in this Complaint seek recourse for the Plaintiff based on violation of constitutional civil rights under 42 U.S.C. § 1981, and 2000, 21 U.S.C. § 360bbb-3, federal statutes, and common law civil actions, and as such, this Court has jurisdiction over these Claims pursuant to 28 U.S.C. § 1331.

## PARTIES

At all times material to this lawsuit, Andrew Torio has resided in Port Washington, NY and has worked for Cushman and Wakefield in Queens, NY.

At all times material to this lawsuit, Cushman and Wakefield's New York place of business is located at 1290 6th ave, New York, NY 10104

Plantiff Torio has the capacity to sue and be sued.

Defendant Cushman and Wakefield has the capacity to sue and be sued.

Defendant Fatima McKeon has the capacity to sue and be sued.

Defendant Dawn Short-Austin has the capacity to sue and be sued.

All acts necessary or precedent to the bringing of this lawsuit accrued or occurred in New York City, NY.

## FACTUAL ALLEGATIONS

1. Plaintiff is an Operating Engineer at 1 Court square , Long Island city, Queens, NY and began work at this commercial building in July of 2011.

2. Plaintiff, after reinstatement, is still employed currently at 1 Court Square full time

3. Defendants have over 500 employees.

4. Plaintiff sent a document to multiple members of the HR and Management departments stating his religious objection to unwanted medical intervention.

5. On August 24, 2021 Defendant sent an email to the Plaintiff stating it is mandatory to answer a personal medical question regarding his genetic property.  Plaintiff answered the question checking the option " I don't wish to disclose". The email from defendant also stated that if you prefer not to disclose, you will be considered unvaccinated. (See Exhibit A)

6. On December 16, 2021 Plaintiff was sent an email by Defendant stating "you are REQUIRED to enter your vaccination status in Workday" (Workday is a company profile and Payroll website)

7.  On December 18, 2021 the Plaintiff's supervisor, Fred Varone sat him down and read a document from Cushman and Wakefield stating that any employees who are unvaccinated must get vaccinated by December 27, 2021 or they will be put on unpaid suspension for 30 days. After 30 days if you are not vaccinated you will be terminated.

8. Also on  December 18, 2021 Fred Varone stated that the Plaintiff must answer a question regarding his vaccine status. Plaintiff answered that he was unvaccinated.

9. Also on December 18, 2021 Fred Varone presented the Plaintiff with a document labeled "ORDER OF THE COMMISSIONER OF HEALTH AND MENTAL HYGEINE TO

REQUIRE COVID-19 VACCINATION IN THE WORKPLACE". In that document Dave A. Chokshi, MD, MSc, Commissioner of the Department of Health and Mental Hygiene ordered that "Beginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity before entering the workplace, and a covered entity must exclude from the workplace any worker who has not provided such proof, except as provided in paragraph 5." Page 5 - paragraph 5 of that document states "Nothing in this order shall be construed to prohibit reasonable accommodations for medical or **religious** reasons." Also in that document on page 4, paragraph 4, section b – states "Fully vaccinated means at least two weeks have passed after an individuals received a single dose of a COVID-19 vaccine that requires only one dose, or the second dose of a two-dose series of a COVID-19 vaccine **approved** or **authorized** for use by the Food and Drug Administration or World Health Organization, or any other circumstances defined by the Department in its guidance associated with this order. (See Exhibit B)

    10. On December 19, 2021 Plaintiff received an email from Defendant stating that "a vaccine mandate will go in effect on for all New York City employees as of Monday, December 27." The email also stated "in accordance with the new NYC vaccine mandate, employees who fail to provide proof of vaccination will no longer be able to perform their work at any NYC corporate office." (See Exhibit C)

    11. On December 21, 2021 Plaintiff sent an email to several people in the HR department, including  Dawn Short-Austin explaining his rights under Title VII and stating "I am notifying you that I am exempt from getting the vaccine based on my seriously held religious views". (See Exhibit D)

12. On December 23, 2021 Peter Baracskai (the building manger at 1 Court Square) send Plaintiff an email stating that his religious request in under review and reminding him that He will be "placed on leave of absence, starting December 27, 2021 until such time as your exemption request is resolved.  In the meantime, if you decide to get vaccinated for COVID-19 , please let us know." This email was also cc'd to Dawn Short-Austin. (See Exhibit E)

13. On December 23, 2021 Plaintiff responded to Peter Baracskai reinstating his beliefs and rights under Title VII of the Civil Rights act of 1964. (See Exhibit F)

14. On December 29, 2021 Plaintiff received an e-mail from Dawn Short-Austin stating "please find your accommodation letter".  The attached accommodation letter was signed from Fatima McKeon, Sr. Director of Engineering NE.  The Letter states "After careful consideration, C&W has determined that granting your requested accommodation presents an unreasonable risk to others that may be present at the facility. The letter also states "As  an initial accommodation, and in lieu of termination, you will be placed on an unpaid leave of absence beginning December 27, 2021 for up to 30 days.  Further, during your leave period you may look for other roles or locations (outside of New York City) or shifts that can accommodate your requested exemption. If you are unable to secure a C&W position by January, 26, 2022, your employment will end on that day. In the meantime, if you decide to get vaccinated for COVID-19, Please let us know." (See Exhibit G)

15. Plaintiff  was placed on unpaid leave on December 29, 2021

16. Plaintiff  alleges that the unmerited adjudication by Fatima McKeon and Dawn Short-Austin on December 29, 2021 was unreasonable, capricious and arbitrarily conceived without due process of law.

17. Plaintiff Alleges Defendants have threatened Plaintiff with suspension and termination on several occasions.

18. Plaintiff Alleges Defendant suspended Plaintiff for conscientiously objecting to forced medical intervention.

19. Plaintiff alleges that the arbitrary decisions made by Defendants staff discriminated against his Constitutionally protected rights.

20. On Jan 5, 2022 Plaintiff received the Janssen Covid-19 vaccine under duress from fear of losing his job and benefits for his family.

21. On January 6,  2022 Plaintiff presented his supervisor with a valid Covid-19 vaccine card. Plaintiff  was able to return to work on January 7, 2022.

22. Plaintiff alleges that the rights that existed on January 7, also existed before the harassment, coercion, and duress was instigated by Cushman and Wakefield staff.

23. Plaintiff alleges that religious objectors were targeted, harassed, legally coerced and discriminated against by Defendants using fear, suspensions and termination as a means to compel compliance.

24. Plaintiff alleges that defendants used intimidation and fear to compel performance.

25.  Plaintiff alleges that defendants denied his religious accomidation while trying to force compliance on an emergency use authorized drug which requires by law, full voluntary consent.

26. "The Jansen COVID-19 vaccine is an unapproved vaccine". (Exhibit H, page 4)

27.  "The United States FDA has made the Janssen COVID-19 vaccine available under an emergency access mechanism called an EUA." (Exhibit H, page 8)

28. "Under the EUA, there is an option to accept or refuse receiving the vaccine. Should you decide not to receive the vaccine, it will not change your standard medical care." "The Janssen COVID-19 vaccine is only authorized if other COVID-19 vaccines are not accessible or clinically appropriate or for individuals who **elect** to receive the Janssen COVID-19 vaccine because they would otherwise not receive a COVID-19 vaccine." (Exhibit H, page 6)

29. Plaintiff suffered psychological trauma that included emotional distress and anxiety over the economic consequences and fear of losing Plaintiff's job.

30. On February 4th, 2024, Plaintiff filed a New York State Division of Human Rights discrimination charge against the Defendants.

31. On August 21, 2022 Plaintiff receive a response letter from the NYS Division of Human Rights stating that "the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of."

32. On August 26, 2022 Plaintiff wrote a letter to the EEOC asking to review the decision of the NYS Division of Human Rights and requested a right to sue letter.

33. On October 2, 2022, Plaintiff received the right to sue from the EEOC.(See Exhibit K)

## COUNT I – U.S.C. TITLE 42 § 2000 (e) (5) - 42 USC 1981 (a), (b)

34. Plaintiff reallege, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

35. Defendant, Cushman and Wakefield, is responsible for enforcing of all policies and procedures complained about herein.

36.     The Defendants enforcing of the "NYC Vaccine Mandate" created a workforce that highlighted, identified, terrorized, and ultimately vilified religious objectors due to the refusal of forced medical intervention, absent of any legal or lawful authority.

37.     Plaintiff alleges that the Defendant created a workplace environment that recklessly and negligently used deceptive tactics to misrepresent and obfuscate the actual status of the emergency use authorized drugs.

38.     Plaintiff contends that the Defendant retaliated against the Plaintiff for exercising his First Amendment right.

39.     Plaintiff alleges that the Defendants, absent of any legal or lawful authority, forcefully attempted to apply the recommendations from the Department of Health and Mental Hygene and other agencies, and the proximate result being the reckless and callous deprivation of their employee's individual liberties.

40.     Liberties which include freedom of conscience, personal autonomy, right to act or abstain, and the right to control which chemical substances enter the blood stream.

41.     Plaintiff alleges that the Defendant knew or should've known that First Amendment violations of employee by employer is both illegal and unlawful and creates liability on behalf of Cushman and Wakefield, its parents, and subsidiaries.

42.     However altruistic, the intentions of the Defendants may or may not have been, Cushman and Wakefield and its employees acted outside the scope of their professional authority and used fear to compel performance.

43.     Plaintiff alleges that this level of negligence by a corporation, who has a plethora of trained attorneys on staff, displays willful intent.

44.     Plaintiff alleges that the Defendants knew or should have known that duress and coercion are not proper ways of conducting business and is a violation of the Plaintiff's rights as secured by both the New York and United States Constitutions.

45.     Defendants and their employees, directly or indirectly, worked in concert To deprive the protections afforded by civil and constitutional rights; to wit the proximate result has been traumatizing to mind, body, and soul of the Plaintiff.

WHEREFORE, Plaintiff demands judgement for the violation of his civil rights against the Defendant jointly and severally for actual, general, special, and compensatory damages in the amount of $300,000.00 and further demand judgement against the Defendant for punitive damages in an amount to be determined by the jury, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT II – Violation of 21USC -360bbb-3

46.     Plaintiff realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

47.     Defendants knew or should've known that recommendations, advice, guidelines, and suggestions from the CDC, WHO, or any other health agency  did not create a legislative law that granted lawful authority to terrorize their workforce.

48.     At no time did the Defendants ever give the Plaintiff an option to accept or refuse the COVID-19 vaccine or of the consequences, if any of refusing to take the COVID-19 vaccine.

49.     At no time did the Defendants ever provide the Plaintiff with alternatives to taking the COVID-19 vaccine that are available and their benefits and risks.

50.     Defendants Fatime McKeon and Dawn Short-Austin created and fostered a hostile

workplace environment that singled out and marked employees who objected to the emergency use authorized drugs.

51.     Defendants knew or should have known that the COVID-19 vaccines available at the time were not fully authorized and that any mandate enforced by their company requires full voluntary consent.

52.     Defendants Fatime McKeon and Dawn Short-Austin  knew or should have known that terrorizing employees with fear of termination and the act of suspension is not a proper way to conduct business as reasonable people.

WHEREFORE, Plaintiff demands judgement for the violation of her civil rights against the Defendants jointly and severally for actual, general, special, and compensatory damages in the amount of $300,000.00 and further demand judgement against the Defendant for punitive damages in an amount to be determined by the jury, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT III – COMMON LAW CONSPIRACY

53.     Plaintiff realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

54.     Defendants and their employees had **(1)** a task to be accomplished; **(2)** an agreement on the object or course of action, to wit, to deprive the Plaintiff of his right to equal protection of the law, specifically the right to think and act independently of anyone else and conscientiously object to forced medical intervention; **(3)** performed one or more unlawful overt acts, suspension being one; and **(4)** caused Plaintiff damages that were a direct cause of those acts.

55.     Defendants used coercion in the form of harassment, acts, and threats ultimately committing the overt act of suspension against the Plaintiff while threatening termination.

56.     No less than five **(5)** Cushman and Wakefield employees were involved with the sharing of the Plaintiff's private religious and medical information, absent of any authorization by the Plaintiff.

57.     The Defendants knew or should have known that the Department of Health and Mental Hygiene and the WHO are not legislative bodies that can grant Cushman and Wakefield the authority to violate rights constitutionally protected.

58.     Defendant created a workplace environment that recklessly and callously deprived the Plaintiff of his rights.

59.     Plaintiff was subjected to arbitrary discrimination by Cushman and Wakefield employees who worked, directly and indirectly, in furtherance of the conspiracy the proximate result being deprivation of the Plaintiff's civil and constitutionally protected rights.

60.     Plaintiff was suspended as retaliation for his religious beliefs.

61.     Plaintiff suffered actual damages in the loss of wages and was psychologically abused and emotionally traumatized by the actions of the Defendant.

WHEREFORE, Plaintiff demands judgement for the violation of his civil rights against the Defendant jointly and severally for actual, general, special, and compensatory damages in the amount of $300,000.00 and further demand judgement against the Defendant for punitive damages in an amount to be determined by the jury, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT IV - NEGLIGENT INFLICTION OF EMOTIONAL STRESS

62.     Plaintiff realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

63.     Defendants and their employees knew or should have known, as reasonable men and women, the duties we each have towards one another as members of society with different beliefs, customs, usages, and practices.

64.     Defendants breached their duty as reasonable men and women by recklessly, callously, and unreasonably inflicting emotional distress, mental anxiety, and causing physical symptomatologies to the Plaintiff.

65.     Plaintiff, at 49 years old, had to psychologically and emotionally deal with the threat of termination and the act of suspension while supporting a wife and his two children.

66.     Defendant acted on hearsay, suggestions, recommendations, and advice given by corporate, state, federal, and local "health" agencies and acted unreasonably in subjecting their entire workforce to experimental "vaccines," while negligently withholding information vital to their decision, namely that the "vaccines" were emergency use authorized, underlined experimental drugs.

67.     Plaintiff was humiliated, shamed, threatened, and coerced absent of any legal or lawful authority.

WHEREFORE, Plaintiff demands judgement, including interest, against the Defendants in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

# REQUEST FOR RELIEF

WHEREFORE, Plaintiff Andrew Torio seeks redress for grievances in which this Court can grant relief:

68.     Assume jurisdiction over this action.

Plaintiff asks this Court pursuant to its authority to adopt the doctrine of respondent superior and hold accountable the Fatima McKeeon and Dawn Short-Austin, for their role in creating a workplace environment that arbitrarily and capriciously discriminated against religious objectors absent of any legal or lawful authority.

69.     Plaintiff demands punitive damages from Defendant Cushman and Wakefield in the amount of $3,000,000.00 dollars for the arbitrary, capricious, and unreasonable deprivation of rights as secured by the Constitution of the United States.

WHEREFORE, Plaintiff demands judgement for actual, compensatory, and punitive damages against Defendant, together with such other relief as the Court may deem reasonable and just under the circumstances.

Dated this __**29**__ day of December, 2022.

Respectfully submitted,

Andrew Torio, Plaintiff

## VERIFICATION OF COMPLAINT

STATE OF NEW YORK

NASSAU COUNTY

I, Andrew Torio, am the named Plaintiff above and state and swear before God, under penalty of perjury, under the laws of the United States, that the following is true and correct to the best of my knowledge:

1. I am over the age of 18 and am competent to testify before this court.

2. I am the Plaintiff in the above-entitled action and I am familiar with the files, records and pleadings in this matter.

3. The facts set forth in this petition are true and correct to the best of my knowledge.

FURTHER THE AFFIANT SAYETH NAUGHT.

Andrew Torio, Affiant

State of _NY_ County of _Nassau_
Subscribed and sworn to (or affirmed) before me on this
_24th_ day of _December_, 20_22_ by
_Andrew Torio_ proved to me on the basis
of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature _Lynn J Moessner_

LYNN J MOESSNER
Notary Public, State of New York
No. 01M04970982
Qualified in Nassau County
My Commission Expires 8/20/20_26_

16

## ACTION REQUIRED: Complete your vaccination form in Workday

WorkdayNotification cushwake <cw@myworkday.com>
Tue 8/24/2021 9:12 AM

To: Andrew Torio/USA <Andrew.Torio@cis.cushwake.com>

Hello Andrew,

Effective August 16, all U.S. employees are REQUIRED to enter their vaccination status in Workday regardless of work location. Additionally, all U.S. employees working from or visiting our corporate offices are REQUIRED to show proof of full vaccination or provide weekly negative COVID-19 test results before entering our offices. **This is MANDATORY.** Please note that you are not in compliance with our policies and you will continue to receive these messages until you take action.

Currently, we do not have your vaccination status OR proof of vaccination recorded in Workday. Until you complete the process, you will be considered unvaccinated and must complete weekly COVID-19 tests in order to enter our corporate offices.

**Below are actions you should take immediately,** regardless of work location:

**IF YOU ARE FULLY VACCINATED AGAINST COVID-19:**
1. Enter your vaccination status AND upload your vaccination card to Workday using the Quick Reference Guide.

**IF YOU ARE NOT VACCINATED AGAINST COVID-19:**
1. We encourage you to get vaccinated against COVID-19.
o The vaccine is free; visit vaccines.gov to find a vaccine provider near you.
o The company will not deduct from paid time off (PTO) balances, for up to four hours (or more if required by local law) for employees receiving the vaccine during work hours.

2. Enter your vaccination status to Workday using the Quick Reference Guide. If you prefer not to disclose, there is an option in Workday to indicate that you prefer not to answer in which case you will be considered unvaccinated.

If you have any technical issues with Workday, please contact the Global IT Service Desk.

We know these are difficult times and we appreciate your efforts in helping to create a safer environment for the team.

Click Here to view the notification details.

http://www.cushmanwakefield.com/

# EXHIBIT A

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION IN THE WORKPLACE

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such Order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS,** the COVID-19 virus continues to spread and mutate, and on November 26, 2021, the World Health Organization ("WHO") declared a new variant of COVID-19, named Omicron, a variant of concern and preliminary evidence suggests an increased risk of reinfection and spread across the world, including to the United States; and

**WHEREAS,** on November 26, 2021, New York State Governor Kathy Hochul issued Executive Order No. 11 to address new emerging threats across the State posed by COVID-19, finding that New York is experiencing COVID-19 transmission at rates the State has not seen since April 2020 and that the rate of new COVID-19 hospital admissions has been increasing over the past month to over 300 new admissions a day; and

**WHEREAS,** COVID-19 spreads when an infected person exhales the virus and these are breathed in by other people or land on their eyes, noses, or mouth, with people closer than 6 feet from the infected person most likely to get infected, making the risk of COVID-19 transmission greater in workplace settings because of close proximity to others and the sharing of office space and facilities such as restrooms, elevators, lobbies, meeting and break rooms, and other common areas; and

**WHEREAS,** the WHO and the U.S. Centers for Disease Control and Prevention ("CDC") have advised all individuals to take measures to reduce their risk of COVID-19, especially the Delta and Omicron variants, including vaccination, which is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** a study by Yale University demonstrated that the City's vaccination campaign was estimated to have prevented about 250,000 COVID-19 cases, 44,000 hospitalizations and 8,300 deaths from COVID-19 infection since the start of vaccination through July 1, 2021, and the City believes the number of prevented cases, hospitalizations and death has risen since then; and that between January 1, 2021, and June 15, 2021, over 98% of hospitalizations and deaths from COVID-19 infection involved those who were not fully vaccinated;

1

**EXHIBIT B**

**WHEREAS**, a system of vaccination that requires employers to implement vaccination policies for their employees will potentially save lives, protect public health, and promote public safety; and

**WHEREAS**, on September 9, 2021, President Biden issued an Executive Order stating that "It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public," and ordering each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law"; and

**WHEREAS**, on August 16, 2021, Mayor Bill de Blasio signed Emergency Executive Order No. 225, the "Key to NYC," which requires the employees, as well as patrons, of establishments providing indoor entertainment, dining, and fitness to show proof of at least one dose of an approved COVID-19 vaccine, and such Order, as reissued in Emergency Executive Order No. 316 on December 13, 2021, is still in effect; and

**WHEREAS**, on August 24, 2021, I issued an Order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting, and such Order was re-issued on September 12 and 15, 2021, and subsequently amended on September 28, 2021, and such Orders and amendment were ratified by the Board of Health on September 17, 2021 and October 18, 2021; and

**WHEREAS**, on September 12, 2021, I issued an Order requiring that staff of early childhood programs or services provided under contract with the Department of Education or the Department of Youth and Community Development provide proof of COVID-19 vaccination, and that Order was ratified by the Board of Health on September 17, 2021; and

**WHEREAS**, on October 20, 2021, I issued an Order requiring that City employees provide proof of vaccination to their agencies or offices by October 29, 2021 or be excluded from their workplace, and on October 31, 2021, I issued a supplemental Order, and both Orders were ratified by the Board of Health on November 1, 2021; and

**WHEREAS**, on November 17, 2021, I issued an Order requiring COVID-19 vaccinations for staff of child care programs, as defined therein, and in early intervention programs, and such Order was ratified by the Board of Health on November 19, 2021; and

**WHEREAS**, on December 2, 2021, I issued an Order requiring COVID-19 vaccinations for all nonpublic school staff and volunteers; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene ("the Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and

**EXHIBIT B**

conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance and protection of public health; and

**WHEREAS,** Section 17-104 of the New York City Administrative Code ("Administrative Code") directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b) of Administrative Code, the Department may adopt vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is needed to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**NOW THEREFORE,** I, Dave A. Chokshi, MD, MSc, Commissioner of the Department of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, and hereby order that:

1. Beginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity before entering the workplace, and a covered entity must exclude from the workplace any worker who has not provided such proof, except as provided in paragraph 5.

2. Covered entities shall verify workers' proof of vaccination. Covered entities shall:

   a. maintain a copy of each worker's proof of vaccination and, if applicable, a record of reasonable accommodation(s) as described in (b)(iv); *OR*

   b. maintain a record of such proof of vaccination, provided that such record shall include:

      i. the worker's name; and

      ii. whether the person is fully vaccinated; and

      iii. for a worker who submits proof of the first dose of a two-dose vaccine, the date by which proof of the second dose must be provided, which must be no later than 45 days after the proof of first dose was submitted; and

      iv. for a worker who does not submit proof of COVID-19 vaccination because of a reasonable accommodation, the record must indicate that such accommodation was provided, and the covered entity must separately maintain records stating the basis for such accommodation and any supporting documentation provided by such worker; *OR*

   c. check the proof of vaccination before allowing a worker to enter the workplace and maintain a record of the verification.

**EXHIBIT B**

For a non-employee worker, such as a contractor, a covered entity may request that the worker's employer confirm the proof of vaccination in lieu of maintaining the above records. A covered entity shall maintain a record of such request and confirmation.

Records created or maintained pursuant to this section shall be treated as confidential.

A covered entity shall, upon request by a City agency, make available for inspection records required to be maintained by this section, consistent with applicable law.

3. No later than December 27, 2021, a covered entity shall affirm on a form provided by the Department compliance with the requirements of paragraph 2 of this Order and post the affirmation in a conspicuous location.

4. For purposes of this Order:

    a. "Covered entity" means:

        i. a non-governmental entity that employs more than one worker in New York City or maintains a workplace in New York City; or

        ii. a self-employed individual or a sole practitioner who works at a workplace or interacts with workers or the public in the course of their business.

    b. "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that requires only one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization, or any other circumstance defined by the Department in its guidance associated with this Order.

    c. "Proof of vaccination" means one of the following documents demonstrating that an individual has (1) been fully vaccinated against COVID-19; (2) received one dose of a single-dose COVID-19 vaccine; or (3) received the first dose of a two-dose COVID-19 vaccine, provided that a worker providing proof of only such first dose provides proof of receiving the second dose of that vaccine within 45 days after receiving the first dose:

        i. A CDC COVID-19 Vaccination Record Card or other official immunization record from the jurisdiction, city, state, or country where the vaccine was administered, or from a healthcare provider or other approved immunizer who administered the vaccine, that provides the person's name, vaccine brand, and date of administration. A digital photo or photocopy of such record is also acceptable.

        ii. New York City COVID Safe App showing a vaccination record;

        iii. A valid New York State Excelsior Pass/Excelsior Pass Plus;

        iv. CLEAR Health Pass; or

**EXHIBIT B**

    v. Any other method specified by the Commissioner as sufficient to demonstrate proof of vaccination.

d. "Worker" means an individual who works in-person in New York City at a workplace. Worker includes a full- or part-time staff member, employer, employee, intern, volunteer or contractor of a covered entity, as well as a self-employed individual or a sole practitioner.

Worker does not include:

    i. an individual who works from their own home and whose employment does not involve interacting in-person with co-workers or members of the public;

    ii. an individual who enters the workplace for a quick and limited purpose; or

    iii. non-City residents who are performing artists, college or professional athletes, or individuals accompanying such performing artists or college or professional athletes who do not have to display proof of vaccination pursuant to the Key to NYC program, Emergency Executive Order No. 316 and successor Orders.

e. "Workplace" means any location, including a vehicle, where work is performed in the presence of another worker or member of the public.

5. Nothing in this Order shall be construed to prohibit reasonable accommodations for medical or religious reasons.

6. This Order shall not apply to covered entities or individuals who are already subject to another Order of the Commissioner of the Department, Board of Health, the Mayor, or a State or federal entity that is in effect and requires them to maintain or provide proof of full vaccination or to individuals who have been granted a reasonable accommodation pursuant to such requirement.

7. This Order shall take effect immediately, and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter, or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: <u>December 13, 2021</u>

                                        Dave A. Chokshi, MD, MSc
                                        Commissioner

**EXHIBIT B**

**From:** Todd Schwartz; Jean Manning <noreplies@comms.cushwakedigital.com>
**Sent:** Sunday, December 19, 2021 11:05 AM
**To:** Frederick Varone/USA <Frederick.Varone@cis.cushwake.com>
**Subject:** WFH ADVISORY & VACCINE MANDATE: IMPORTANT NYC COVID-19 UPDATE

For Internal Use Only. View this email online

Forward to a Cushman & Wakefield colleague.

RETURN TO THE OFFICE  CUSHMAN & WAKEFIELD

December 19, 2021

This communication is an important follow-up to last week's message regarding the statewide mask mandate announced by New York Governor Kathy Hochul. Since this announcement, additional measures have been instated on a citywide level. As a result, a **vaccine mandate will go into effect for all New York City employers as of Monday, December 27.**

We will continue to monitor this fluid situation for any changes in law or litigation related to the State and City orders as the health and safety of our employees remains top of mind, especially during the holiday season. We acknowledge that between the recent spike in COVID-19 cases and an uptick in seasonal traveling, flexible work options are more crucial than ever. **This is why we are encouraging corporate employees to work from home, when possible, for the next 2-3 weeks.**

Our plan will continue to adjust accordingly to any changes in law and patterns in COVID-19 cases, and we will continue to keep you updated. We appreciate your cooperation during these challenging times

**What Does The Vaccine Mandate Mean for Cushman & Wakefield Employees?**
Effective Monday, December 27, **Cushman & Wakefield employees will be REQUIRED to provide proof of vaccination against COVID-19 before entering the workplace.** We thank the vast majority of you for already having done so—no further action is required from you.

In accordance with the new NYC vaccine mandate, **employees who fail to provide proof of vaccination will no longer be able to perform their work at any NYC corporate office.** Further communication will be sent directly to this group of employees later today.

The vaccine mandate will be exercised in tandem with a company mask mandate for our corporate offices. Out

1

**EXHIBIT C**

of an abundance of caution, all employees will be required to wear a mask inside our New York corporate offices except when alone in a private office or personal workspace.

The new requirements also apply to all guests visiting our NYC offices, including employees visiting from other offices, clients and vendors. As such, all visitors will be required to show proof of vaccination. Acceptable forms of proof include:

- CDC COVID-19 vaccine card
- New York City COVID-19 Safe App record
- New York State Excelsior Pass/Excelsior Pass Plus
- CLEAR Health Pass
- Other official vaccine records from the jurisdiction where the vaccine was administered, or from a healthcare provider or other approved immunizer who administered the vaccine, that provides the person's name, vaccine brand, and date of administration. A digital photo or photocopy of such record is also acceptable.

We will be staffing our front desk with a dedicated concierge-level professional who will handle the review of proof of vaccination for visitors.

Employees who believe they are unable to be fully vaccinated should contact their People Partner to initiate an evaluation for an accommodation.

*Note: Employees working at client sites should continue to follow client protocols.*

If you have any questions or concerns, please reach out to your People Partner or HR Services via PeopleZone. We thank you in advance for your cooperation and remain committed to keeping you informed.



**Todd Schwartz**
Managing Principal
New York



**Jean Manning**
Managing Director
New York Operations



For internal use only

### Join the conversation online



**CUSHMAN & WAKEFIELD**

**www.cushmanwakefield.com**

This email has been sent to you by Todd Schwartz; Jean Manning noreply@cushwake.com To ensure delivery, add us to your address book or safe senders list. This email was intended for employees at Cushman & Wakefield or C&W Services. If you have received this email in error, please delete it immediately, notify the sender, and click here. This email may contain confidential information and may be legally privileged or prohibited from disclosure and unauthorized use. Click here for our privacy notice.

**EXHIBIT C**

Get Outlook for iOS

**From:** Dawn R. Short-Austin/USA <Dawn.Short@cushwake.com>
**Sent:** Tuesday, December 21, 2021 4:32:22 PM
**To:** Hilary Aue/USA <Hilary.Aue@cushwake.com>; Andrew Torio/USA
<Andrew.Torio@cis.cushwake.com>
**Subject:** RE: Religious Exemption

Hi Hilary -  The ER team has reached out to Andrew

Dawn

**From:** Hilary Aue/USA <Hilary.Aue@cushwake.com>
**Sent:** Tuesday, December 21, 2021 4:24 PM
**To:** Andrew Torio/USA <Andrew.Torio@cis.cushwake.com>
**Cc:** Dawn R. Short-Austin/USA <Dawn.Short@cushwake.com>
**Subject:** RE: Religious Exemption

Hello Andrew -  I have forwarded your request to Dawn Short-Austin, the Human Resources
business partner for your team.  She will be in contact with you regarding next steps.

Hilary

**From:** Andrew Torio/USA <Andrew.Torio@cis.cushwake.com>
**Sent:** Tuesday, December 21, 2021 12:41 AM
**To:** Hilary Aue/USA <Hilary.Aue@cushwake.com>
**Subject:** Religious Exemption

Dear Hilary,

I first off just want to thank God and our company Cushman and Wakefield for giving me this job and caring
so much about its employees during these uncertain times.

I am writing to you about the recent harassment and coercion against me regarding the vaccine deadline of
December 27, 2021. Since my supervisor sat me down on the morning of December 18 and threatened my
livelihood with a suspension, I began to pray for my salvation. I have had sleepless nights pondering how to
continue to support my wife and two children while maintaining my true spiritual morals. I am a hard-working
Christian that has come to work every day throughout the pandemic without questioning my faith and God's
plan. I have complied to changing my shift hours and working double and even unlawful triple shifts to avoid
contact with other co-workers to minimize risk as per my supervisor's plan of action.

**EXHIBIT D**

As a Human Resource personnel, I am assuming you are aware of Title VII of the Civil Rights Act of 1964 which states that no employer can discriminate their employees based on their religious beliefs. This very sentiment is also reiterated under the non-discrimination policy on the Cushman and Wakefield website. I believe this act remains one of the most significant legislative achievements in American history.

Therefore, I am notifying you that I am exempt from getting the vaccine based on my seriously held religious views. God created me with an immune system and I will not alter its perfect design. It is a sin against my God given conscience to allow intrusions into my body which is a temple of the Holy Spirit. My religious beliefs are what has guided me throughout my whole life. I wish to go about my continued work in the same faith and dedication which I have for the past 13 years with Cushman and Wakefield. I look forward to hearing from you promptly to confirm my Religious exemption. If you have any further questions, I am happy to share my answers with you.

Respectfully,
Andrew Torio

ID# 100023976

The information contained in this email (including any attachments) is confidential, may be subject to legal or other professional privilege and contain copyright material,
and is intended for use by the named recipient(s) only.

Access to or use of this email or its attachments by anyone else is strictly prohibited and may be unlawful. If you are not the intended recipient(s), you may not use, disclose,
copy or distribute this email or its attachments (or any part thereof), nor take or omit to take any action in reliance on it. If you have received this email in error, please notify
the sender immediately by telephone or email and delete it, and all copies thereof, including all attachments, from your system. Any confidentiality or privilege is not waived
or lost because this email has been sent to you by mistake.

Although we have taken reasonable precautions to reduce the risk of transmitting software viruses, we accept no liability for any loss or damage caused by this email or its
attachments due to viruses, interference, interception, corruption or unapproved access.

For information on how your personal information is processed, including information on how to
exercise state or country specific Privacy Rights please view our privacy notice here:
https://www.cushmanwakefield.com/en/privacy-and-cookies

**EXHIBIT D**



1290 Ave of the Americas
8th Floor
New York, NY 10104
Tel    +1 212 841 5054
Fax    +1 212 805 1592
cushmanwakefield.com

December 23, 2021

**Sent via work and personal email**

Andrew Torio
One Court Square
25-01 Jackson Avenue
Long Island City, NY 11101

**RE:  Notification – Accommodation Request Under Review**

Dear Andrew,

On December 6, 2021, New York City Mayor Bill de Blasio announced a city-wide COVID-19 vaccine mandate, and on December 13, 2021, the New York City Commissioner of Health and Mental Hygiene published the corresponding official order for the vaccine mandate. Specifically, the Commissioner's order requires that, beginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity employer before entering the workplace, and such employer must not permit any worker who has not provided such proof to enter and work, unless an employee is granted a reasonable accommodation for medical or religious purposes, or the "worker only ever enters the workplace for a quick and limited purpose".

As you know, your role requires that you work onsite at One Court Square.  C&W has received and is currently reviewing your request for exemption or accommodation based upon a sincerely held religious belief or practice.  Human Resources will be reaching out separately with additional information, once their review is completed.

In order to comply with the New York City mandate and/or clinic protocols, you will be placed on an unpaid leave of absence, beginning on **December 27, 2021** until such time as your exemption request has been resolved.  In the meantime, if you decide to get vaccinated for COVID-19, please let us know.

Please reach out to me or Dawn Short-Austin with any questions

Sincerely,

Peter Baracskai
Senior Property Manager

Cc:    Dawn Short-Austin, Cushman & Wakefield
        Anne Kennedy, Cushman & Wakefield
        Vito Barbagallo, Cushman & Wakefield
        Fred Varone, Cushman & Wakefield
        Personnel File

# EXHIBIT E

Get Outlook for iOS

**From:** Andrew Torio <andrewtorio@yahoo.com>
**Sent:** Thursday, December 23, 2021 6:08 PM
**To:** Peter Baracskai/USA <Peter.Baracskai@cushwake.com>
**Cc:** Andrew Torio/USA <Andrew.Torio@cis.cushwake.com>; Dawn R. Short-Austin/USA
<Dawn.Short@cushwake.com>; Anne Kennedy/USA <anne.kennedy@cushwake.com>; Vito Barbagallo/USA
<Vito.Barbagallo@cushwake.com>; Frederick Varone/USA <Frederick.Varone@cis.cushwake.com>
**Subject:** Accommodation Request Under Review

External Mail

Dear Peter,  Dawn, Anne, Vito and Fred,

I first want to thank you all for your service and dedication to Cushman and Wakefield during these troubled times.  I have been working for this organization for 13 years without any conflicts. I am  sincerely grateful for my employment in this company which has allowed me to support my wife and 2 kids.

 I have just read the attached letter threatening my Livelihood. My beliefs and morals have not changed overnight. I am willing to go through this illegal process as I am confident I will receive justice.  I am aware that you possibly don't agree with my moral and ethical beliefs but thats what make us all unique. This very sentiment is protected by the constitution (Title VII of the Civil rights act of 1964) and is also stated on the Cushman and Wakefield website under the discrimination section.  I really hate to put you all in this difficult position. I have done everything possible to help our crew stay safe throughout this situation. I have changed my shift around a few times, working double shifts and following and the safety protocols to date. However, this latest measure and unlawful strong arming is just something I morally and ethically can not acquiesce to based on my seriously held beliefs. I really hope you will follow the law and fight for me on this issue as the fate of my career is collectively in your hands. I just want to continue working.
Happy Holidays to you and your family.


Respectfully,
Andrew Torio


**EXHIBIT F**

 **CUSHMAN & WAKEFIELD**

1290 Ave of the Americas
8ᵗʰ Floor
New York, NY 10104
Tel    +1 212 841 5054
Fax   +1 212 805 1592
cushmanwakefield.com

December 29, 2021

Andrew.Torio@cis.cushwake.com
Andrew Torio
16 Herbert Avenue
Port Washington, New York 11050

**RE:  Regarding Religious Accommodation Request**

Dear Andrew:

On December 6, 2021, New York City Mayor Bill de Blasio announced a city-wide COVID-19 vaccine mandate, and on December 13, 2021, the New York City Commissioner of Health and Mental Hygiene published the corresponding official order for the vaccine mandate. Specifically, the Commissioner's order requires that, beginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity employer before entering the workplace, and such employer must not permit any worker who has not provided such proof to enter and work, subject to few exceptions.

C&W has received your request for an exemption from the vaccination requirement as an accommodation for your sincerely held religious belief or practice. As you know, your role, Operating Engineer, requires that you work onsite at the 1 Court Square, Long Island City, New York facility in areas occupied by other employees, visitors, and employees of 1 Court Street, Long Island City, New York.

After careful consideration, C&W has determined that granting your requested accommodation presents an unreasonable risk to others that may be present at the facility. While C&W is unable to grant your requested accommodation, C&W values your skills and will partner with you to try to find an alternative assignment, as an accommodation, where vaccination for COVID-19 is not a requirement of the position. As an initial accommodation, and in lieu of termination, you will be placed on an unpaid leave of absence, beginning on **December 27, 2021, for up to 30 days.**  Further, during your leave period you may look for other roles or locations (outside New York City) or shifts that can accommodate your requested exemption. If you are unable to secure a C&W position by **January 26, 2022,** your employment with C&W will end on that day. In the meantime, if you decide to get vaccinated for COVID-19, please let us know.

You can view and apply for C&W career opportunities through Workday. Click on the Careers icon. If you see a role that matches your experience, qualifications, and location requirements, please apply online, then send me an email with the Job Requisition ID number and I'll follow-up with the recruiter to ensure your application is reviewed quickly. You must follow this process for your application to be considered as part of the accommodation process.

As a result of the separation of your employment, any employment benefits in which you were enrolled through C&W, will end on your termination date.  You will receive a separate correspondence shortly addressing your ability to continue your health, dental and vision insurance (if applicable) under COBRA.

Please reach out to me or Dawn R. Short-Austin, your HR People Partner with any questions. Otherwise, we wish you well in your future endeavors.

X  _Fatima McKeon_

Fatima McKeon
Sr Director of Engineering NE

Cc:     Frederick Varone – Chief Engineer/Employee Personnel File
        Dawn R. Short-Austin – HR, People Partner

**EXHIBIT G**

## FACT SHEET FOR RECIPIENTS AND CAREGIVERS

## EMERGENCY USE AUTHORIZATION (EUA) OF
## THE JANSSEN COVID-19 VACCINE TO PREVENT CORONAVIRUS DISEASE 2019
## (COVID-19)

The Janssen COVID-19 Vaccine is authorized for use in individuals 18 years of age and older for whom other FDA-authorized or approved COVID-19 vaccines are not accessible or clinically appropriate, and for individuals 18 years of age and older who elect to receive the Janssen COVID-19 Vaccine because they would otherwise not receive a COVID-19 vaccine. The Janssen COVID-19 Vaccine can cause blood clots with low levels of platelets (blood cells that help your body stop bleeding), which may be fatal.

You are being offered the Janssen COVID-19 Vaccine to prevent Coronavirus Disease 2019 (COVID-19) caused by SARS-CoV-2 because there is currently a pandemic of COVID-19.

This Fact Sheet contains information to help you understand the risks and benefits of receiving the Janssen COVID-19 Vaccine.

The Janssen COVID-19 Vaccine may prevent you from getting COVID-19.

Read this Fact Sheet for information about the Janssen COVID-19 Vaccine. Talk to the vaccination provider if you have questions.

The Janssen COVID-19 Vaccine has received EUA from FDA to provide the following doses in individuals 18 years of age and older for whom other FDA-authorized or approved COVID-19 vaccines are not accessible or clinically appropriate, and in individuals 18 years of age and older who elect to receive the Janssen COVID-19 Vaccine because they would otherwise not receive a COVID-19 vaccine:

- A single dose primary vaccination.

- A single booster dose after completing a primary vaccination with the Janssen COVID-19 Vaccine.

- A single booster dose after completing primary vaccination with a different authorized or approved COVID-19 vaccine.

The Janssen COVID-19 Vaccine may not protect everyone.

This Fact Sheet may have been updated. For the most recent Fact Sheet, please visit www.janssencovid19vaccine.com.

# EXHIBIT H

## WHAT YOU NEED TO KNOW BEFORE YOU GET THIS VACCINE

## WHAT IS COVID-19?

COVID-19 is caused by a coronavirus called SARS-CoV-2. This type of coronavirus has not been seen before. You can get COVID-19 through contact with another person who has the virus. It is predominantly a respiratory illness that can affect other organs. People with COVID-19 have had a wide range of symptoms reported, ranging from mild symptoms to severe illness. Symptoms may appear 2 to 14 days after exposure to the virus. Common symptoms may include: fever or chills; cough; shortness of breath; fatigue; muscle or body aches; headache; new loss of taste or smell; sore throat; congestion or runny nose; nausea or vomiting; diarrhea.

## WHAT IS THE JANSSEN COVID-19 VACCINE?

The Janssen COVID-19 Vaccine is an unapproved vaccine that may prevent COVID-19.

Under an EUA, the FDA has authorized the emergency use of the Janssen COVID-19 Vaccine to prevent COVID-19 in individuals 18 years of age and older for whom other FDA-authorized or approved COVID-19 vaccines are not accessible or clinically appropriate, and in individuals 18 years of age and older who elect to receive the Janssen COVID-19 Vaccine because they would otherwise not receive a COVID-19 vaccine.

For more information on EUA, see the **"What is an Emergency Use Authorization (EUA)?"** section at the end of this Fact Sheet.

## WHAT SHOULD YOU MENTION TO YOUR VACCINATION PROVIDER BEFORE YOU GET THE JANSSEN COVID-19 VACCINE?

Tell the vaccination provider about all of your medical conditions, including if you:

- have any allergies,
- have a fever,
- have a bleeding disorder or are on a blood thinner,
- have ever had a low level of platelets (blood cells that help your body stop bleeding),
- are immunocompromised or are on a medicine that affects your immune system,
- are pregnant or plan to become pregnant,
- are breastfeeding,
- have received another COVID-19 vaccine,
- have ever fainted in association with an injection.

**EXHIBIT H**

2

**WHO SHOULD GET THE JANSSEN COVID-19 VACCINE?**

FDA has authorized the emergency use of the Janssen COVID-19 Vaccine in individuals 18 years of age and older for whom other FDA-authorized or approved COVID-19 vaccines are not accessible or clinically appropriate, and in individuals 18 years of age and older who elect to receive the Janssen COVID-19 Vaccine because they would otherwise not receive a COVID-19 vaccine.

**WHO SHOULD <u>NOT</u> GET THE JANSSEN COVID-19 VACCINE?**

You should not get the Janssen COVID-19 Vaccine if you:

- had a severe allergic reaction after a previous dose of this vaccine.

- had a severe allergic reaction to any ingredient of this vaccine.

- had a blood clot along with a low level of platelets (blood cells that help your body stop bleeding) following Janssen COVID-19 Vaccine or following AstraZeneca's COVID-19 vaccine (not authorized or approved in the United States).

**WHAT ARE THE INGREDIENTS IN THE JANSSEN COVID-19 VACCINE?**

The Janssen COVID-19 Vaccine includes the following ingredients: recombinant, replication-incompetent adenovirus type 26 expressing the SARS-CoV-2 spike protein, citric acid monohydrate, trisodium citrate dihydrate, ethanol, 2-hydroxypropyl-β-cyclodextrin (HBCD), polysorbate-80, sodium chloride.

**HOW IS THE JANSSEN COVID -19 VACCINE GIVEN?**

The Janssen COVID-19 Vaccine will be given to you as an injection into the muscle.

<u>Primary Vaccination</u>

The Janssen COVID-19 Vaccine is administered as a **single dose**.

<u>Booster Dose</u>

- A single booster dose of the Janssen COVID-19 Vaccine may be administered at least two months after primary vaccination with the Janssen COVID-19 Vaccine.

- A single booster dose of the Janssen COVID-19 Vaccine may be administered after completing primary vaccination with a different authorized or approved COVID-19 vaccine. Please check with your health care provider regarding timing of the booster dose.

**EXHIBIT H**

**HAS THE JANSSEN COVID-19 VACCINE BEEN USED BEFORE?**

The Janssen COVID-19 Vaccine is an unapproved vaccine. In clinical trials, more than 61,000 individuals 18 years of age and older have received the Janssen COVID-19 Vaccine. Millions of individuals have received the vaccine under EUA since February 27, 2021.

**WHAT ARE THE BENEFITS OF THE JANSSEN COVID-19 VACCINE?**

The Janssen COVID-19 Vaccine has been shown to prevent COVID-19. The duration of protection against COVID-19 is currently unknown.

**WHAT ARE THE RISKS OF THE JANSSEN COVID-19 VACCINE?**

Side effects that have been reported with the Janssen COVID-19 Vaccine include:

- Injection site reactions: pain, redness of the skin and swelling.

- General side effects: headache, feeling very tired, muscle aches, nausea, and fever.

- Swollen lymph nodes.

- Blood clots.

- Unusual feeling in the skin (such as tingling or a crawling feeling) (paresthesia), decreased feeling or sensitivity, especially in the skin (hypoesthesia).

- Persistent ringing in the ears (tinnitus).

- Diarrhea, vomiting.

<u>Severe Allergic Reactions</u>

There is a remote chance that the Janssen COVID-19 Vaccine could cause a severe allergic reaction. A severe allergic reaction would usually occur within a few minutes to one hour after getting a dose of the Janssen COVID-19 Vaccine. For this reason, your vaccination provider may ask you to stay at the place where you received your vaccine for monitoring after vaccination. Signs of a severe allergic reaction can include:

- Difficulty breathing,

- Swelling of your face and throat,

- A fast heartbeat,

- A bad rash all over your body,

- Dizziness and weakness.

<u>Blood Clots with Low Levels of Platelets</u>

Blood clots involving blood vessels in the brain, lungs, abdomen, and legs along with low levels of platelets (blood cells that help your body stop bleeding), have occurred in some people who

**EXHIBIT H**

4

have received the Janssen COVID-19 Vaccine. In people who developed these blood clots and low levels of platelets, symptoms began approximately one to two weeks after vaccination. Blood clots with low levels of platelets following the Janssen COVID-19 Vaccine have been reported in males and females, across a wide age range of individuals 18 years and older; reporting has been highest in females ages 30 through 49 years (about 8 cases for every 1,000,000 vaccine doses administered), and about 1 out of every 7 cases has been fatal. You should seek medical attention right away if you have any of the following symptoms after receiving the Janssen COVID-19 Vaccine:

- Shortness of breath,

- Chest pain,

- Leg swelling,

- Persistent abdominal pain,

- Severe or persistent headaches or blurred vision,

- Easy bruising or tiny blood spots under the skin beyond the site of the injection.

Immune Thrombocytopenia (ITP)

Immune Thrombocytopenia (ITP) is a disorder that can cause easy or excessive bruising and bleeding due to very low levels of platelets. ITP has occurred in some people who have received the Janssen COVID-19 Vaccine. In most of these people, symptoms began within 42 days following receipt of the Janssen COVID-19 Vaccine. The chance of having this occur is very low. If you have ever had a diagnosis of ITP, talk to your vaccination provider before you get the Janssen COVID-19 Vaccine. You should seek medical attention right away if you develop any of the following symptoms after receiving the Janssen COVID-19 Vaccine:

- Easy or excessive bruising or tiny blood spots under the skin beyond the site of the injection,

- Unusual or excessive bleeding.

Guillain Barré Syndrome

Guillain Barré syndrome (a neurological disorder in which the body's immune system damages nerve cells, causing muscle weakness and sometimes paralysis) has occurred in some people who have received the Janssen COVID-19 Vaccine. In most of these people, symptoms began within 42 days following receipt of the Janssen COVID-19 Vaccine. The chance of having this occur is very low. You should seek medical attention right away if you develop any of the following symptoms after receiving the Janssen COVID-19 Vaccine:

- Weakness or tingling sensations, especially in the legs or arms, that's worsening and spreading to other parts of the body.

- Difficulty walking.

- Difficulty with facial movements, including speaking, chewing, or swallowing.

**EXHIBIT H**

5

- Double vision or inability to move eyes.
- Difficulty with bladder control or bowel function.

These may not be all the possible side effects of the Janssen COVID-19 Vaccine. Serious and unexpected effects may occur. The Janssen COVID-19 Vaccine is still being studied in clinical trials.

**WHAT SHOULD I DO ABOUT SIDE EFFECTS?**

If you experience a severe allergic reaction, call 9-1-1, or go to the nearest hospital.

Call the vaccination provider or your healthcare provider if you have any side effects that bother you or do not go away.

Report vaccine side effects to **FDA/CDC Vaccine Adverse Event Reporting System (VAERS)**. The VAERS toll-free number is 1-800-822-7967 or report online to https://vaers.hhs.gov/reportevent.html. Please include "Janssen COVID-19 Vaccine EUA" in the first line of box #18 of the report form.

In addition, you can report side effects to Janssen Biotech, Inc. at the contact information provided below.

| e-mail | Fax number | Telephone numbers |
|---|---|---|
| JNJvaccineAE@its.jnj.com | 215-293-9955 | US Toll Free: 1-800-565-4008<br>US Toll: (908) 455-9922 |

You may also be given an option to enroll in **v-safe**. **V-safe** is a new voluntary smartphone-based tool that uses text messaging and web surveys to check in with people who have been vaccinated to identify potential side effects after COVID-19 vaccination. **V-safe** asks questions that help CDC monitor the safety of COVID-19 vaccines. **V-safe** also provides live telephone follow-up by CDC if participants report a significant health impact following COVID-19 vaccination. For more information on how to sign up, visit: www.cdc.gov/vsafe.

**WHAT IF I DECIDE NOT TO GET THE JANSSEN COVID-19 VACCINE?**

Under the EUA, there is an option to accept or refuse receiving the vaccine. Should you decide not to receive the Janssen COVID-19 Vaccine, it will not change your standard medical care.

**ARE OTHER VACCINES AVAILABLE FOR PREVENTING COVID-19 BESIDES JANSSEN COVID-19 VACCINE?**

COMIRNATY and SPIKEVAX are FDA-approved COVID-19 vaccines. Other vaccines to prevent COVID-19 may be available under EUA. The Janssen COVID-19 Vaccine is only authorized if other COVID-19 vaccines are not accessible or clinically appropriate, and for individuals who elect to receive the Janssen COVID-19 Vaccine because they would otherwise not receive a COVID-19 vaccine.

**EXHIBIT H**

6

## CAN I RECEIVE THE JANSSEN COVID-19 VACCINE AT THE SAME TIME AS OTHER VACCINES?

Data have not yet been submitted to FDA on administration of the Janssen COVID-19 Vaccine at the same time as other vaccines. If you are considering receiving the Janssen COVID-19 Vaccine with other vaccines, discuss your options with your healthcare provider.

## WHAT IF I AM PREGNANT OR BREASTFEEDING?

If you are pregnant or breastfeeding, discuss your options with your healthcare provider.

## WILL THE JANSSEN COVID-19 VACCINE GIVE ME COVID-19?

No. The Janssen COVID-19 Vaccine does not contain SARS-CoV-2 and cannot give you COVID-19.

## KEEP YOUR VACCINATION CARD

When you receive the Janssen COVID-19 Vaccine, you will get a vaccination card to document the name of the vaccine and date of when you received the vaccine.

## ADDITIONAL INFORMATION

If you have questions or to access the most recent Janssen COVID-19 Vaccine Fact Sheets, scan the QR code using your device, visit the website or call the telephone numbers provided below.

| QR Code | Fact Sheets Website | Telephone numbers |
|---------|---------------------|-------------------|
|  | www.janssencovid19vaccine.com. | US Toll Free: 1-800-565-4008<br>US Toll: (908) 455-9922 |

## HOW CAN I LEARN MORE?

- Ask the vaccination provider.
- Visit CDC at https://www.cdc.gov/coronavirus/2019-ncov/index.html.
- Visit FDA at https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization.

**EXHIBIT H**

7

Contact your local or state public health department.

**WHERE WILL MY VACCINATION INFORMATION BE RECORDED?**

The vaccination provider may include your vaccination information in your state/local jurisdiction's Immunization Information System (IIS) or other designated system. For more information about IISs visit: https://www.cdc.gov/vaccines/programs/iis/about.html.

**CAN I BE CHARGED AN ADMINISTRATION FEE FOR RECEIPT OF THE COVID-19 VACCINE?**

No. At this time, the provider cannot charge you for a vaccine dose and you cannot be charged an out-of-pocket vaccine administration fee or any other fee if only receiving a COVID-19 vaccination. However, vaccination providers may seek appropriate reimbursement from a program or plan that covers COVID-19 vaccine administration fees for the vaccine recipient (private insurance, Medicare, Medicaid, HRSA COVID-19 Uninsured Program for non-insured recipients).

**WHERE CAN I REPORT CASES OF SUSPECTED FRAUD?**

Individuals becoming aware of any potential violations of the CDC COVID-19 Vaccination Program requirements are encouraged to report them to the Office of the Inspector General, U.S. Department of Health and Human Services, at 1-800-HHS-TIPS or TIPS.HHS.GOV.

**WHAT IS THE COUNTERMEASURE INJURY COMPENSATION PROGRAM?**

The Countermeasures Injury Compensation Program (CICP) is a federal program that may help pay for costs of medical care and other specific expenses for certain people who have been seriously injured by certain medicines or vaccines, including this vaccine. Generally, a claim must be submitted to the CICP within one (1) year from the date of receiving the vaccine. To learn more about this program, visit www.hrsa.gov/cicp or call 1-855-266-2427.

**WHAT IS AN EMERGENCY USE AUTHORIZATION (EUA)?**

The United States FDA has made the Janssen COVID-19 Vaccine available under an emergency access mechanism called an EUA. The EUA is supported by a Secretary of Health and Human Services (HHS) declaration that circumstances exist to justify the emergency use of drugs and biological products during the COVID-19 pandemic.

The Janssen COVID-19 Vaccine has not undergone the same type of review as an FDA-approved or cleared product. FDA may issue an EUA when certain criteria are met, which includes that there are no adequate, approved, and available alternatives. In addition, the FDA decision is based on the totality of scientific evidence available showing that the product may be effective to prevent COVID-19 during the COVID-19 pandemic and that the known and potential benefits of the product outweigh the known and potential risks of the product. All of these criteria must be met to allow for the product to be used during the COVID-19 pandemic.

**EXHIBIT H**

The EUA for the Janssen COVID-19 Vaccine is in effect for the duration of the COVID-19 declaration justifying emergency use of these products, unless terminated or revoked (after which the products may no longer be used).

Manufactured by:
Janssen Biotech, Inc.
a Janssen Pharmaceutical Company of Johnson & Johnson
Horsham, PA 19044, USA



© 2021 Janssen Pharmaceutical Companies

For more information, call US Toll Free: 1-800-565-4008, US Toll: (908) 455-9922 or go to www.janssencovid19vaccine.com

Revised: May/05/2022

 Scan to capture that this Fact Sheet was provided to vaccine recipient for the electronic medical records/immunization information systems.

GDTI: 0886983000363

cp-205985v11

**EXHIBIT H**

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/27/2022

**To:** Andrew Torio
16 Herbert Avenue
Port Washington, NY 11050

Charge No: 16G-2022-01535

EEOC Representative and email:     Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
09/27/2022
Timothy Riera
Acting District Director

# EXHIBIT K