UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW TORIO,

                    Plaintiff,                22-cv-10980 (JGK)

          - against -                         MEMORANDUM OPINION AND
                                              ORDER
CUSHMAN & WAKEFIELD U.S., INC., ET
AL.

                    Defendants.

---

JOHN G. KOELTL, District Judge:

     The pro se plaintiff, Andrew Torio, brought this action

against Cushman & Wakefield U.S., Inc., ("C&W" or the "Company")

and two of C&W's employees, Fatime McKeon ("McKeon") and Dawn

Short-Austin ("Short-Austin"). Torio alleges violations of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.

("Title VII"), 42 U.S.C. §§ 1983, 1985, and a violation of the

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3

("FDCA"). Torio also brings related claims under New York state

law alleging common law conspiracy and intentional infliction of

emotional distress.

     The defendants filed a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6). See ECF No. 22. For

the reasons stated below, the defendants' motion to dismiss is

**granted.**

1

**I.**

The following allegations are taken from the First Amended Complaint ("FAC"), see ECF No. 19, and are accepted as true for the purposes of the defendants' motion to dismiss.

**A.**

Torio is a Christian and adheres to the religious tenets associated with his faith. See FAC, Ex. D. C&W is a private real estate company. Torio has worked as an Operating Engineer for C&W since July 2011 and is currently employed in that position. FAC ¶¶ 1-2. As an Operating Engineer, Torio works on-site at one of C&W's commercial buildings. See FAC, Ex. G; FAC ¶ 1.

On December 6, 2021, the New York City Mayor announced a city-wide COVID-19 vaccine mandate. See FAC, Ex. E. Following the Mayor's mandate, the New York City Commissioner of Health and Mental Hygiene issued an order on December 13, 2021 requiring that

> [b]eginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity before entering the workplace, and a covered entity must exclude from the workplace any worker who has not provided such proof, except as provided in paragraph 5.

FAC, Ex. B ("Commissioner's Order"). Paragraph 5 of the Commissioner's Order provides that "[n]othing in this Order shall be construed to prohibit reasonable accommodations for medical or religious reasons." Id. Pursuant to the

Commissioner's Order, a "covered entity" includes a "non-governmental entity that employs more than one worker in New York City or maintains a workplace in New York City." Id.

On December 19, 2021, C&W emailed employees, including Torio, stating that "employees will be REQUIRED to provide proof of vaccination." FAC, Ex. C (emphasis in original). The email stated: "In accordance with the new NYC vaccine mandate, employees who fail to provide proof of vaccination will no longer be able to perform their work at any NYC corporate office." Id. The email also provided: "Employees who believe they are unable to be fully vaccinated should contact their People Partner to initiate an evaluation for an accommodation." Id.

On December 21, 2023, Torio emailed the Human Resources ("HR") department, stating that he was exempt from the vaccine requirement based on his "seriously held religious views." FAC ¶ 12; Id. Ex. D. An employee in the HR department then forwarded Torio's e-mail to the defendant, Short-Austin, the HR business partner at C&W assigned to Torio's team. See FAC, Ex. D. On December 23, 2021, a Senior Property Manager of C&W emailed Torio, placing Torio on a leave of absence starting December 27, 2021 "until such time as [Torio's] exemption request is resolved." FAC ¶ 16; Id. Ex. E. On December 29, 2021, defendant McKeon, the Senior Director of Engineering NE, emailed Torio,

3

denying his request to be exempted from the Company's vaccine requirement. See FAC, Ex. G. In that email, McKeon explained:

> As you know, your role, Operating Engineer, requires that you work onsite at the 1 Court Square, Long Island City, New York facility in areas occupied by other employees, visitors, and employees of 1 Court Street, Long Island City, New York.
>
> After careful consideration, C&W has determined that granting your requested accommodation presents an unreasonable risk to others that may be present at the facility.

Id. "As an initial accommodation, and in lieu of termination," C&W placed Torio on an unpaid leave of absence, beginning December 27, 221, for up to 30 days. Id. The email stated that if Torio was unable to secure another C&W position by January 26, 2022, Torio's employment with C&W would end on that date. Id.

On January 5, 2022, Torio received the Janssen vaccine for COVID-19. FAC ¶ 33; Id. Ex. H. The next day, he presented proof of vaccination to his supervisor. FAC ¶ 34. On January 7, 2022, C&W allowed Torio to return to work. Id.

**B.**

On February 4, 2022, Torio filed a complaint against the defendants with the New York State Division of Human Rights. FAC ¶ 43. On August 21, 2022, Torio received a letter in response, stating that "the Division has determined that there is no probable cause to believe that the respondent has engaged in or

4

is engaging in the discriminatory practice complained of." Id. ¶ 44. On August 26, 2022, Torio appealed to the EEOC, requesting the right to file a lawsuit, id. ¶ 45, and on September 27, 2022, the EEOC adopted the findings of the agency and provided notice of Torio's right to sue, id. Ex. K; FAC ¶ 46. On December 30, 2022, Torio brought this action against the defendants, ECF No. 1, and filed an Amended Complaint on June 23, 2023, ECF No. 19. The defendants now move to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Procedure 12(b)(6).

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).[1] "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, the Court "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Villar v. Ramos, No. 13-cv-8422, 2015 WL 3473413, at *1 (S.D.N.Y. June 2, 2015).

### III.

### A.

Torio first alleges that the defendants violated Title VII by discriminating against him based on his religious beliefs and by failing to offer him a reasonable accommodation for the vaccine requirement. See FAC ¶¶ 47-71. The defendants urge that Torio failed to plead that he was treated differently from any other employee at C&W because of his religion, see Defs' Mem. 9, that C&W provided Torio with reasonable accommodations, id. at

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

11, and that the Complaint must be dismissed against McKeon and Short-Austin because individuals are not liable under Title VII, see id. at 2, 11.

Title VII prohibits employers from discriminating against employees on the basis of religion. See 42 U.S.C. § 2000e-2(a)(1). The statute requires an employer to "reasonably accommodate" an employee's "religious observance or practice," unless doing so would impose "undue hardship on the conduct of the employer's business." Id. § 2000e(j).

"[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). At the pleadings stage, Torio "must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id.

As an initial matter, Torio cannot maintain a Title VII action against McKeon and Short-Austin in their individual capacities, for "[i]ndividuals are not subject to liability under Title VII." Patterson v. County of Oneida, N.Y., 375 F.3d

7

206, 221 (2d Cir. 2004) (quoting <u>Wrighten v. Glowski</u>, 232 F.3d 119, 120 (2d. Cir. 2000)(per curiam)). Accordingly, the Title VII claims against McKeon and Short-Austin are **dismissed.**

With respect to Torio's claims against C&W, the FAC fails to allege facts that give rise to the plausible inference that C&W suspended Torio because of his religion. Torio alleges that he is a member of a protected class, namely Christian, <u>see</u> FAC, Ex. D, and that as a consequence of his religious beliefs and refusal to take the vaccine, C&W suspended his employment, FAC ¶¶ 21-22. Torio contends that the circumstances surrounding this suspension support an inference of discrimination on the basis of his religion. <u>Id.</u> ¶ 18-22. However, C&W imposed the vaccine requirement on all of its employees, not just those who are Christian. <u>See</u> FAC, Ex. C. And Torio fails to allege any facts to support his claim that "other similarly situated employees who were unvaccinated outside his protected class received better treatment." FAC ¶ 56.[2] Because the bare pleadings in the FAC do not make out a plausible claim of religious discrimination, Torio's Title VII claim against C&W must be dismissed. <u>See, e.g.</u>, <u>Littlejohn v. City of New York</u>, 795 F.3d

---

[2] Torio's contention that C&W's "HR FAQS," <u>see</u> FAC, Ex. J, and "U.S. COVID-19 Policy FAQs," <u>see</u> FAC, Ex. L, "prove that certain unvaccinated individuals were able to continue working unvaccinated without any adverse employment actions[,]" FAC ¶ 55, is unfounded. These documents indicate only that C&W adopted policies for unvaccinated employees.

297, 310-11 (2d Cir. 2015) (requiring facts "suggesting an inference of discriminatory motivation" to sustain a Title VII complaint); Brodt v. City of New York, 4 F. Supp. 3d 562, 569-70 (S.D.N.Y. 2014)(dismissing a Title VII discrimination claim because no inference of discrimination could be drawn).

In any event, Torio's Title VII claim against C&W fails because C&W provided Torio with a reasonable accommodation. See Philbrook v. Ansonia Bd. of Education, 757 F.2d 476, 481 (2d Cir. 1985)("Under Title VII, an employer cannot discriminate against any employee on the basis of the employee's religious beliefs unless the employer shows that he cannot reasonably accommodate the employee's religious needs without undue hardship on the conduct of the employer's business.").

C&W offered to "partner with [Torio] to try to find an alternative assignment, as an accommodation, where vaccination for COVID-19 is not a requirement of the position[,]" FAC, Ex. G, and the Company provided Torio with sufficient time, until January 26, 2022, to obtain such a position, id. Torio does not allege that C&W failed to honor this commitment. Instead, on January 5, 2022, Torio elected to receive a COVID-19 vaccine, before C&W's deadline had passed. FAC ¶ 33. For the foregoing reasons, Torio's Title VII claim against C&W is **dismissed.**

Case 1:22-cv-10980-JGK   Document 27   Filed 12/14/23   Page 10 of 16

**B.**

Torio next alleges that the defendants violated Section
1983 by discriminating against him based on his religious
objection to the vaccine, FAC ¶ 73, and that they violated
Section 1985(3), by conspiring to discriminate against him, <u>see</u>
<u>id.</u> ¶¶ 74-86.

**1.**

"To state a claim under [Section] 1983, a plaintiff must
allege the violation of a right secured by the Constitution and
laws of the United States, and must show that the alleged
deprivation was committed by a person under color of state law."
<u>Feingold v. New York</u>, 366 F.3d 138, 159 (2d Cir. 2004). "The
purpose of [Section] 1983 is to deter state actors from . . .
depriv[ing] individuals of their federally guaranteed rights. .
.." <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992). Accordingly, to
plead a claim under Section 1983, a plaintiff is "required to
show state action." <u>Sybalski v. Indep. Grp. Home Living Program,
Inc.</u>, 546 F.3d 255, 257 (2d Cir. 2008).

The pivotal issue, therefore, is whether the individual
employee-defendants and C&W were state actors when they
implemented the Commissioner's Order and corresponding vaccine
requirements. A private individual "may be considered a state
actor" for the purposes of Section 1983 only "if [that
individual's] conduct is fairly attributable to the state."

_Leeds v. Meltz_, 85 F.3d 51, 54 (2d Cir. 1996). The conduct of private actors can be attributed to the State if: "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." _Hogan v. A.O. Fox Memorial Hosp._, 346 F. App'x 627, 629 (2d. Cir. 2009).

In this case, Torio does not plead facts that establish that the individual defendant-employees at C&W and C&W -- a private real estate company -- meet the state action requirement of Section 1983. _See, e.g._, _Sybalski_, 546 F.3d at 260 (finding that corporate owners of a group home for mentally disabled adults and five employees of that company were not liable under Section 1983); _Antwi v. Montefiore Medical Center_, 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014) (concluding that a private medical center confining a patient pursuant to a New York regulation is not a state actor).

Torio contends that C&W's requirement that its employees be vaccinated is "fairly attributable to the state" because the Company was enforcing the Commissioner's Order and other state mandates. _See_ Pl.'s Response ¶¶ 24-25. But, the FAC contains no allegations that New York exercised its coercive power to compel C&W to adopt its vaccine requirement. _See Leeds_, 85 F.3d at 54 (To transform a private actor into a state actor, "the state

11

must have exerted its coercive power over, or provided significant encouragement to, the defendant before the latter will be deemed a state actor."). And Torio fails to allege any facts to support his contention that C&W can be considered a state actor under the "public function test." See Pl. Response ¶ 28; see also Sybalski, 546 F.3d at 259-60 (rejecting the claim that private actors satisfied the public function test when a private entity did not provide a function that was "traditionally" and "exclusively" reserved for the state). C&W's compliance with the Commissioner's Order, without more, is insufficient to transform the Company's policies into state actions. See Waterman v. Nolan, No. 23-cv-4903, 2023 WL 4134229, at *2 (S.D.N.Y. June 22, 2023) (collecting cases); see also Martinez v. Wolowski, No. 2:22-cv-00083, 2022 WL 14753179, at *4 (W.D. Mich., Oct. 4, 2022) (following a statewide mask mandate does not turn a private actor into a state actor), report and recommendation adopted, 2022 WL 14655418 (W.D. Mich. Oct. 25, 2022). For these reasons, the plaintiff's Section 1983 claim is **dismissed.**

### 2.

"To state a cause of action under [Section] 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the

12

laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Id. To maintain such an action, the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 345 F.3d 105, 110 (2d Cir. 2003).

In this case, Torio failed to plead the requisite animus or meeting of the minds to support his claim under Section 1985(3). Torio alleges that McKeon and Short-Austin "conspired together to discriminate[] against [him] for having alternative beliefs against the COVID-19 [vaccine]." FAC ¶ 74. But the FAC contains no allegation that McKeon or Short-Austin acted with discriminatory animus in denying Torio a religious exemption. Therefore, because Torio's claims are "devoid of any specific facts relating to the purported conspiracies," his Section 1985(3) claim must be dismissed. See K.D. ex rel. Duncan v. White Plains School Dist., 921 F. Supp. 2d 197, 209-210 (S.D.N.Y. 2018).

Moreover, Torio's claim is also barred because the alleged conspirators are members of the same corporate entity - i.e., C&W. See Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."); see also Murphy v. City of Stamford, 634 F. App'x 804, 805 (2d Cir. 2015)(recognizing that "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together"). Torio alleges a conspiracy exists between his supervisor, McKeon, and Short-Austin. See FAC ¶¶ 74-77. But the Company and its employees are members of a single entity that cannot conspire with itself. Accordingly, Torio's Section 1985(3) claim is **dismissed.**

## C.

Torio next complains that the defendants violated 21 U.S.C. § 360bbb-3, because the vaccine mandate exceeded the terms of the Food and Drug Administration's emergency use authorization for vaccines. See FAC ¶¶ 87-93.

Section 360bbb-3 of the FDCA sets out a statutory framework for the emergency authorization of products by the United States Food and Drug Administration. See 21 U.S.C. § 360bbb-3. But the FDCA contains no private right of action to enforce alleged

violations. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997); see also Arroyo-Bey v. Manhattan North Management Co. Inc., No. 22-cv-4789, 2022 WL 2805635, at *1 (S.D.N.Y. July 18, 2022) ("[T]he FDCA does not create a private right of action to enforce alleged violations of the statute."). Therefore, Torio's FDCA claim is **dismissed**.

## IV.

Torio brings claims for common law conspiracy, see FAC ¶¶ 94-102, and intentional infliction of emotional distress, see FAC ¶¶ 103-117, under New York law. A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); see Gonzalez v. Micelli Chocolate Mold Co, 514 F. App'x 11, 12 (2d Cir. 2013) (finding no abuse of discretion in the Court's decision to decline to exercise supplemental jurisdiction); see e.g., Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998); Staten v. Patrolmen's Benevolent Ass'n of City of N.Y., 282 F. Supp. 3d 734, 742-43 (S.D.N.Y. 2017).

Having dismissed all of the plaintiff's federal claims, the claims over which this Court has original jurisdiction, declining to exercise supplemental jurisdiction over the state-law claims is appropriate at this early stage of the litigation.

<u>Lawtone-Bowles v. City of New York, Dep't of Sanitation</u>, 22 F. Supp. 3d 341, 352-53 (S.D.N.Y. 2014). The plaintiff's claims for common law conspiracy and intentional infliction of emotional distress are therefore **dismissed without prejudice**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted**. The Clerk is directed to close ECF No. 22. The Clerk is also directed to enter judgment and to close this case.[3] The Clerk is directed to mail a copy of this Memorandum Opinion and Order to the plaintiff and to note mailing on the docket of the Court.

**SO ORDERED.**

Dated:   New York, New York
         December 14, 2023

                                   John G. Koeltl
                          United States District Judge

---

[3] The plaintiff has not sought to file a second amended complaint and it appears that any amended complaint would not cure the defects in the federal claims and therefore would be futile. In any event, any motion for reconsideration or to file an amended complaint must be filed within fourteen days of the entry of judgement dismissing this case. <u>See</u> Local Civil Rule 6.3.